# UNITED STATES DISTRICT COURT

### for the

### Western District of Texas

FILED

18 JUL -9 PM 1: 22

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| LUKMAN SHINA AMINU | ) | |
| | ) | 1:18·MJ-485 |
| | ) | |
| | ) | |

_Defendant(s)_

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____June 13, 2017_____ in the county of _____Travis_____ in the

_____Western_____ District of _____Texas_____ , the defendant(s) violated:

| _Code Section_ | _Offense Description_ |
|---|---|
| Title 18 USC 1956(h) | -Conspiracy to commit money laundering |

This criminal complaint is based on these facts:

See Attachment

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Brad Weatherford, Texas Ranger
_Printed name and title_

Sworn to before me and signed in my presence.

Date: 7/9/2018

_____
_Judge's signature_

City and state: _____Austin, Texas_____

Andrew W Austin, US Magistrate Judge
_Printed name and title_

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

LUKMAN SHINA AMINU COMPLAINT ATTACHMENT

1.      I, Brad Weatherford, am commissioned as a peace officer by the Texas
Department of Public Safety, currently a Texas Ranger assigned to the Public Integrity
Unit responsible for investigating public officials accused of criminal activity and all other
crimes relating to fraud and public corruption.  I have been a peace officer for over
eleven years, with over four years' fraud and financial crimes investigative experience.  I
have previously served as a Federal Task Force Officer with the Federal Bureau of
Investigations White Collar Crimes Unit and the United States Secret Service Financial
Crimes Unit where I was responsible for investigations involving white collar, gambling,
and property type crimes to include money laundering, identity theft, and all forms of
fraud.  I received formal training through the Texas Department of Public Safety,
Federal Law Enforcement Training Center, Association of Certified Fraud Examiners,
and the National Association of Attorney Generals, in investigations involving financial
and fraud type crimes.  I am a member of a Central Texas Fraud Investigator's working
network where I confer and consult with other senior investigators regarding all types of
crimes involving fraud and financial crimes.

2.      I respectfully submit this affidavit in support of a criminal complaint and
arrest warrant for LUKMAN SHINA AMINU, black male, date of birth, 11-XX-1983.  This
affidavit is submitted for the purpose of establishing probable cause that beginning on or

1

about 06-13-2017 in the Western District of Texas, AMINU conspired to commit laundering of monetary instruments (money laundering) in violation of Title 18, United States Code, Section 1956(h), with knowledge that the transactions were designed to conceal or disguise the nature, location, source, ownership or control of proceeds of Wire Fraud, 18 U.S. Code 1343.

3.    The facts set forth in this affidavit are based on my personal observations, my training and experience, and information obtained from various law enforcement sources, especially the Texas Department of Public Safety (DPS) and the Federal Bureau of Investigation (FBI), witnesses, search warrants, reports, financial records, and other sources. This affidavit is intended to merely show that there is sufficient probable cause to support the requested arrest warrant. Accordingly, this affidavit does not purport to set forth all facts known to me, DPS, or the FBI regarding this matter.

4.    As set forth in detail below, probable cause exists that AMINU conspired with others to launder funds sourced from various frauds, including fraud proceeds from the Western District of Texas procured via Wire Fraud (as outlined below) and multiple other fraudulent schemes (including romance scams) sourced from victims in different jurisdictions around the United States. These frauds constitute specified unlawful activity under the money laundering statute. AMINU received these funds in money orders or via prepaid cards as detailed below and knew that they were the proceeds of unlawful activity. AMINU conducted multiple financial transactions designed to conceal the nature, source, location, ownership, and control of the proceeds.

FACTS

5.    Beginning in June of 2017, an unidentified subject, or subjects, began

2

creating unauthorized accounts for participants in the Employees Retirement System of Texas ("ERS") internet portal. The subject accessed the ERS participant internet portal and used ERS participants' personally identifiable information ("PII") to create 30 accounts for participants who were all over the age of 65 and did not have accounts in the portal. After creating the accounts, the subject changed the bank accounts on file with ERS for 26 participants' retirement payments. ERS, based in Austin, Texas, in the Western District of Texas, detected the fraudulent activity, but not before ERS sustained an actual loss of $10,605.18 with a potential minimum loss estimated at $131, 461.64.

6.      On 07-31-2017, an unidentified subject created an account for Victim-1, 74 years of age, in the ERS internet portal using Vitim-1's PII. The subject then successfully changed the bank account on file with ERS for Victim-1 to a MasterCard prepaid debit card ("MasterCard") issued by Green Dot Bank ("Green Dot"). A confirmation email was sent to an email address provided by the subject, mrpcavanaugh@financier.com, after the account was changed. I spoke with Victim-1, who said the ERS online account was not created or authorized to be created by Victim-1, and the email account associated with the ERS account did not belong to Victim-1.

7.      On 08-29-2017, Victim-1's monthly retirement payment of $1,972.97 was deposited onto the Green Dot MasterCard. On 09-27-2017, Victim-1's monthly retirement payment of $1,972.97 was again deposited onto Green Dot MasterCard.

8.      According to Green Dot account records, the MasterCard debit card was activated in the name of Victim-2, on 06-27-2017. For both Green Dot and Netspend (discussed below) cards, in order for the cards to be fully activated and utilized as debit cards that can receive deposits, an individual's PII must be provided to Green Dot or

Netspend.  On 02-08-2018, Victim-2, 82 years of age, was interviewed by law enforcement and stated she had never purchased, owned, or received a Green Dot prepaid debit card. The initial load (credit) of $10.00 on the card took place on 06-27-2018.  This process does not require registration or an individual's PII, limiting the function of the debit card to a pre-paid card that can only make purchases.  In order for the card to be reloadable (receive deposits), the account must be registered online with an individual's PII.  The Green Dot account registered using Victim-1's PII received three total deposits on the card with two of the deposits from Victim-1's ERS account and one deposit from Victim-2's Prudential account.

9.     Records provided by Green Dot showed that the Internet Protocol ("IP") address 45.76.175.244 was used numerous times from 07-31-2017, through 10-17-2017, to access the online account for the Green Dot MasterCard.  An Information Security Officer employed at ERS confirmed that this IP address, 45.76.175.244, was also used to access the ERS participant internet portal on 10-07-2017 and 10-09-2017. On these two dates, bank account information for 23 ERS participants was changed in the ERS participant internet portal without the participants' knowledge or consent. The IP address is registered to Choopa, LLC, a company which provides "bulletproof hosting" to customers who wish to obtain IP addresses anonymously.

10.     An analysis of records showed that on 08-30-2017, the day after Victim-1's retirement payment was deposited on the Green Dot MasterCard, the card was used at a Hannaford Supermarket ("Hannaford") in Manchester, NH, to make a purchase of $1,904.  Records also showed that on 09-28-2017, the day after Victim-1's second retirement payment was deposited on the Green Dot MasterCard, the card was again

4

used at a Hannaford in Manchester, NH, to make a purchase of $1,905.

11.     A Hannaford representative provided records related to the two purchases on 08-30-2017, the cardholder purchased four Western Union money orders, three for $500.00 and one for $200.00.   The cardholder also received $200.00 in cash, and there was a $4.00 fee charged for the money, making the total $1,904.00.  Each money order contained a sequence number that was provided to Western Union who provided copies of the money orders.  The payee and payee address listed on two of the Western Union money orders was "Wellington Terrace, 57 Wellington Terrace," which is the apartment complex name and address where AMINU was living at the time.  The other two money orders did not have a payee listed on the money orders.  Western Union and MoneyGram print the amount, date, and serial number on the money order.  There is a pay to order section and purchaser's name and address section which can be filled in or left blank by the purchaser.  If left blank, the person that receives the money order can fill in the blank sections on the money order.

12.     Hannaford records showed that on 09-28-2017, the cardholder purchased five Western Union money orders, three for $500.00, one for $300.00, and one for $100.00.   There was a $5.00 fee charged for the money orders, making the total $1,905.00.  Each money order contained a sequence number that was provided to Western Union who provided copies of the money orders.  Western Union money order sequence numbers 651410076-6 ($500.00) and A17-651410077-5 ($300.00) were made out to "Lukman Aminu."  Western Union money order sequence number A17-651410078-4 ($500.00), was made out to PERSON 1, residing in Manchester, New Hampshire.  Western Union money order sequence numbers A17-651410079-3

($500.00) and A17-651410080-2 ($100.00) were made payable to "Insurance Auto Auctions."

13.     The photographs and video provided by Hannaford for the 09-28-2017, purchase of money orders were compared to U.S. immigration photographs of AMINU and to profile photographs of AMINU on social media websites Facebook and LinkedIn. The individual in the photographs provided by Hannaford appears to be the same person depicted in the immigration and social media profile photographs of AMINU. There is an unidentified black male with AMINU during the transaction on 09-28-2017 that resembles PERSON 1, but cannot be confirmed because of the camera angle of the video.

14.     When Victim-2 was interviewed by law enforcement in February of 2018, she also stated that at some point in 2017 she did not receive her deceased husband's monthly retirement payment from Prudential Financial ("Prudential"). Victim-2 reported the missing payment to Prudential and the company issued a new payment. Law Enforcement spoke with a prudential representative who confirmed that Victim-2 did not authorize the change to her bank account on file with Prudential and there was a second attempted deposit that was stopped by Prudential because of suspected fraud. Records subpoenaed from Green Dot showed a payment of $1,561.22 on 07-31-2017, from Prudential to the Green Dot MasterCard.

15.     The following day, 08-01-2017, the Green Dot MasterCard was used to make a purchase of $1,551.40 from a Walmart in Manchester, NH. A Walmart representative informed law enforcement that the purchase was for MoneyGram money orders. MoneyGram provided images of the money orders purchased at Walmart and

one of the money orders is made payable to "Lukman Aminu" for $1,000.00. An address, "57 Wellington Terrace," is also written on the face of the money order. LexisNexis Accurint records for AMINU list his residence at the time as 57 Wellington Terrace Drive, Manchester, NH 03104. The other money order was made payable to "Copart" for $550.00. Open-source reporting indicates that Copart, Inc is a publicly-traded, international auto auction company headquartered in Dallas, Texas. Copart is a global leader in online vehicle auctions, and a premier destination for the resale and remarketing of vehicles. They maintain over 200 locations in 12 countries, including one in Candia, New Hampshire, which is the town adjacent to Manchester, where AMINU resides.

16.　　On 02-14-2018, law enforcement conducted physical surveillance on AMINU's residence at 57 Wellington Terrace and observed a male and a female leaving the residence in a blue Toyota Matrix vehicle. A law enforcement officer who conducted the surveillance believed that the male who left the residence was the same person depicted in the photographs provided by Hannaford. The Toyota Matrix, a 2006 model, is registered to AMINU and a female. The address used for the registration is 57 Wellington Terrace. A second vehicle, a 2004 Mazda 3, is also registered to AMINU at 57 Wellington Terrace. AMINU also possesses a New Hampshire driver license that lists his address as 57 Wellington Terrace.

17.　　The $1,000 MoneyGram money order payable to AMINU (discussed above) was deposited into an account at Digital Federal Credit Union ("DFCU"). DFCU account records showed that AMINU opened the account on 03-16-2016, and provided his address as 57 Wellington Terrace. The account was closed on 11-06-

2017.

18.     An analysis of the DFCU records showed that during the time the account was open, approximately 97 money orders totaling approximately $59,045 were deposited into the account along with $14,736 in cash. During the same time period, there were cash withdrawals of approximately $53,535. There were also three Treasurer's Checks written out of the account totaling $20,000 and three wire transfers out of the account totaling $4,225.00 to A.E.S. Inc. (AES). AES is an international shipping company which claims on their website to be the "undisputed shipping leader to West Africa." The wire transfers are consistent with patterns of money laundering, when compared to the numerous money orders payable to auto auction companies related to this investigation. The purchase and shipment of used vehicles to West Africa is a well-known method of money laundering, as detailed below in section 25.

19.     The analysis of the DFCU account showed a pattern of money order deposits followed by quick withdrawals of cash. For example, on 08-02-2017, the day after the Green Dot MasterCard was used to purchase money orders at Walmart, thirteen money orders totaling $9,850 were deposited in the DFCU account. On the same day, $3,000 in cash was withdrawn from the account. The following day, 08-03-2017, an additional $5,500 was withdrawn from the account. DFCU provided all available video and photos of AMINU's account transactions which I confirmed showed AMINU making the transactions at DFCU. I believe the DFCU account was used primarily as a funnel account and the account transactions are consistent with patterns of money laundering and structuring.

20.     The money orders deposited in AMINU's DFCU account were from

Western Union and MoneyGram and records showed they were purchased at multiple locations, including Hannaford, Wal-Mart, CVS, Rite Aid, Circle K, and Hy-Vee Feed Store.

21.     Hannaford was able to identify two additional receipts related to money order transactions with AMINU's DFCU account.  On 07-06-2017, a money order in the amount of $535.00 was purchased using AMINU's DFCU debit card.  On 07-27-2017, six money orders were purchased, totaling $2,956.00.  One of the money orders in the amount of $450.00 was deposited into AMINU's DFCU account.  Hannaford did not have the money order serial numbers.

22.     Rite Aid records documented the money order transactions totaling $1,400.00 which were paid for with cash.  The money orders purchased at Rite Aid on 06-27-216 in Buffalo, NY, were deposited into AMINU's DFCU account.

23.     CVS records indicated that on 2-23-2017 AMINU received $520.00 at the Manchester CVS Store #2257 via wire transfer from an individual in Canada.  There was only one MoneyGram money order for $20.00 made payable to "Lukman Aminu." CVS will only pay out $500.00 cash on wire transfers, so the remaining amount owed was paid with a money order.

24.     Hy-Vee Feed Store records related to a money order transaction in which the money order was deposited into AMINU's DFCU account.   The Western Union money order (serial number 17-586252996-2), in the amount of $750.00 was purchased on 06-07-2017 using debit card number ending in 7209.  There was one additional money order transaction on 07-29-2017 at Hy-Vee Feed Store associated with debit card number ending in 7209.  A $1,000.00 Western Union money order (17-620810920-

8) was purchased and due to the amount, the purchaser was required to present an identification card. The purchaser's name and PII on the Hy-Vee Feed Store record belonged to Victim-3. The $1,000.00 money order was not deposited into AMINU's account, but I received a copy of the money order from Western Union which listed "Copart" as the payee with "57 Wellington Terrace" as the address, the address of AMINU's residence. I believe the evidence shows that AMINU received the blank money order, filled out "Copart" as the payee, and then wrote in his own home address of "57 Wellington Terrace" onto the money order before endorsing the money order to Copart.

25.    I received records from Community America Bank, the bank issuer of debit card number ending in 7209 that was used to purchase the money orders at Hy-Vee Feed Store. The account membership documents listed Victim-3 as the account individual account holder since 2008.

26.    Records from Wal-Mart documented 29 MoneyGram money order transactions to include payment information associated with money orders either deposited into AMINU's DFCU account or money orders purchased during the same transaction as those money orders deposited into AMINU's DFCU account from 05-09-2016 to 08-01-2017 for a total of $25,895.00. $20,245.00 of the money orders were either made payable to AMINU or deposited into AMINU's DFCU account. The method of payment for the 29 transactions was a Green Dot MasterCard (GreenDot) in the name of Victim-1, a Capital One debit/prepaid card, a Netspend prepaid card, a Navy Federal Credit Union (NFCU) account, a Community America Credit Union (CACU) account in the name of Victim-3, or cash.

27.    Capital One Pre-Paid Card: There were three MoneyGram money orders purchased on 06-02-2017 with Capital One Pre-Paid card number ending in 3263 for a total of $2,547.10. Green Dot purchased the Capital One Pre-Paid card business and a Green Dot fraud investigator told me the account was open for a short period of time, received an IRS tax refund check, and was then emptied shortly after the deposit. One money order was made payable to "IAAI Auto Auctions" for $1,000.00.   One of the money orders was made payable to "Copart Auto Auctions" for $1,000.00, and one money order was made payable to "Lukman Aminu" for $545.00 and deposited into AMINU's DFCU account.  I know through my training and experience and open source reporting that used car markets in Nigeria and Benin are commonly used to launder funds by criminal organizations, specifically individuals that commit fraud in the United States. There is a large market for used vehicles in Nigeria that are purchased at auto auction sites in the United States every year using criminal proceeds. The vehicles are then shipped to Nigeria or to Cotonou, Benin, which is a free-trade area only a two-hour drive from Lagos, Nigeria. The vehicles are then fixed up and resold to the Nigerian public. This network of used car purchases and shipments is a common way for perpetrators of fraud in the United States to send money back to Nigeria (in the value of the shipped car), while simultaneously laundering the funds or "cleaning the money" to make the money appear as legitimate income.

28.    Netspend Pre-Paid Card: There were three MoneyGram money orders purchased on 07-25-2017 at Wal-Mart with Netspend pre-paid card number ending in 8660 for a total of $2,952.10.  Two of the money orders were made payable to "Copart" for $1,000.00 each, with both money orders listing AMINU's home address of "57

Wellington Terrace."  The third money order was made payable to "Lukman Aminu," "57 Wellington Terrace," for $950.00 and deposited into AMINU's DFCU account.  Netspend records indicated the account holder was Victim-4. The Netspend card was purchased with an initial load of $10.00 on 6/22/2017 at a 7-11 store located 1.7 miles from AMINU's residence at the time and 700 miles from the account holder, Victim-4.  Victim-4 told Law Enforcement that he did not open the account and has never been to New Hampshire.  The Netspend pre-paid card was purchased on 06-21-2018 in Manchester, New Hampshire, with an initial load (credit) of $10.00.  The Netspend pre-paid card was registered online at IP address 98.140.143.202 using Victim-4's PII, thus allowing deposits to be made on the Netspend pre-paid card. All transactions on this account, other than the initial load of $10.00, were conducted on 7-25-2017.  The primary load (credit) for $10,277.00 on 7-25-2017 was listed as an IRS tax refund check from the United States Treasury.  Victim-4 had not filed a 2017 tax return which means the tax return deposited on to the Netspend pre-paid card was the proceeds of a fraudulent tax return utilizing Victim-4's PII. The same day of the deposit, there were five large purchases at Wal-Mart and Hannaford stores in the vicinity of Manchester, New Hampshire.  In addition to the Wal-Mart transaction above in which a $950.00 money order was deposited into AMINU's DFCU account, another transaction took place on 07-25-2017 at a different Wal-Mart for the same amount, $2,952.10.  Two of the money orders were made payable to "IAAI" (Insurance Auto Auctions, Inc.), each for $1,000.00. Open-source reporting indicates that Insurance Auto Auctions, Inc. is a nationwide auto auction company with over 160 locations salvage auto auction that works with a variety of sellers including insurance companies, dealerships, rental car companies, and fleet

lease companies to facilitate the efficient sale of total-loss vehicles. IAAI has a location in the Salem/Manchester, New Hampshire area.

29.     Another money order was made payable to "Copart", address listed as "57 Wellington Terrace," for $950.00. Again, I believe the evidence shows that AMINU utilized the pre-paid card to purchase multiple money orders, laundering the proceeds of IRS tax refund fraud.

30.     The New Hampshire Department of State did not locate any business licenses or registrations in AMINU's name. New Hampshire Law Enforcement resources could not locate any New Hampshire employment history or businesses in AMINU's name.

31.     There was a transaction on 07-25-2017 at Hannaford, 201 John Devine Drive, Manchester, NH, for $2,956.00, the same store where AMINU's money order transaction on 09-28-2017 was conducted (discussed in paragraphs 9, 11, and 12). Hannaford provided the receipt for this transaction which listed six money order purchased in addition to a $6.00 service fee for a total of $2,956.00. Hannaford did not have the money order serial numbers retained in their records. There were two additional transactions at a different Hannaford, one transaction for $1,203.00 and the other for $201.00. Hannaford did not have the receipts for these transactions in their records. One final purchase was made at the Mercy of God African Market in Manchester, New Hampshire for $10.80, completely emptying the entire Netspend pre-paid card account. The Netspend pre-paid card was never used again. AMINU's DFCU bank records documented approximately 16 purchases made from his DFCU account at Mercy of God African Market from 5-24-2016 to 5-1-2017.

32.     The Netspend records indicate another card account is connected to the same IP address; this card was activated in the name of Victim-5.  The Netspend pre-paid card in Victim-5's name was purchased on 06-22-2017 with an initial load (credit) of $10.00 at a Rite Aid in Manchester, New Hampshire.   On 07-11-2018, the same IP address of 98.140.143.202 used to register Victim-4's Netspend account was used to register the Netspend account, utilizing Victim-5's PII. This Netspend account received another credit at CVS in the amount of $20.00, but the account never received any additional deposits and was not used to make any purchases.

33.     Navy Federal Credit Union (NFCU): The NFCU records indicated there were three MoneyGram money orders purchased on 06-18-2017 with NFCU debit card number ending in 6334 for a total of $2,802.10.  One money order was made payable to "Lukman Aminu" for $1,000.00 and one money order was made payable to "Lukman Aminu" for $1,000.00, with both money orders deposited into AMINU's DFCU account. One money order was made payable to PERSON 3 for $800.00.  PERSON 3 resides in Londonberry, New Hampshire. The records for NFCU debit card number ending in 6334 showed it was in the name of Victim-6, and listed Victim-6 as an active duty Army officer in the application for the account, but did not indicate the date the account was opened. All significant transactions for this account occurred during a brief period from 6-18-2016 through 6-24-2016, consisting of incoming funds transfers from two other Navy FCU members totaling $12,350.00, followed by immediate withdrawal of funds to purchase money orders at Hannaford and Walmart stores in Manchester and Londonderry, NH.  In addition to the 06-18-2016 transaction at Wal-Mart in Manchester, NH, totaling $2802.10, there was another purchase at the same Wal-Mart on 06-20-

2016 for $2,952.10. There was four purchases made at Hannaford stores in the Manchester area, totaling $5,983.00, with two of the Hannaford stores being the same as AMINU's transaction on 09-28-2017. An NFCU fraud investigator stated that even though the account was still open, it had been locked down since 2016 because of the suspected fraudulent transfers. I spoke to Victim-6's spouse who confirmed Victim-6's identity and told me Victim-6 never had a NFCU account and had never served in the military.

34.     Community America Credit Union (CACU): CACU records show that there were 16 MoneyGram money orders purchased using CACU debit card number ending in 7209 which is the same account previously mentioned to purchase money orders at Hy-Vee Feed Store by Victim-3. 15 of the 16 money orders totaling $13,750.00 were deposited into AMINU's DFCU account, with all but one of the money orders purchased in Independence, Missouri, and the other money order purchased in Centralia, Illinois. There was one money order not deposited into AMINU's DFCU account which was made payable to "Copart Auto Auctions" in the amount of $300.00. Victim-3's name was clearly listed on the money orders as the purchaser, meaning Victim-3 was not trying to hide their identity and believed the money orders were for a legitimate purchase or benefitted someone Victim-3 knew.    CACU records indicated Victim-3 opened the account in 2008, and received payroll deposits into this account for several months until an apparent retirement, followed by pension or 401(k) and social security payments. Bills and living expenses were also paid out of this account. Over a two-month time period in 2017, Victim-3 began conducting transactions consistent with being a "romance scam" victim, with legitimate large deposits from Victim-3's other financial

accounts followed by outgoing money wire transfers on the same day and in the same amount as the deposit. I spoke to a CACU fraud investigator who said CACU believed Victim-3 was the victim of a "romance scam". A CACU employee told Victim-3 they may be the victim of a "romance scam" and Victim-3 responded that the relationship was the real deal—a common occurrence in romance scams. The CACU branch manager also spoke to Victim-3 about the unusual activity and expressed concern that Victim-3 was a victim of a "romance scam", as well as informing Victim-3 that if the activity continued then the account would be closed. On 5-26-2017, Victim-3 received a $30,000.00 deposit from one of Victim-3's financial accounts. On 5-30-2017, Victim-3 initiated a $29,000.00 wire transfer to Person-4 in Abu Dhabi, UAE. The memo line said "HUSBAND IS BUILDING A BRIDGE," so the wire was rejected and credited back to her account on 06-2-2017. Victim-3's account was closed by CACU on 08-09-2017 due to the unusual banking activity related to fraud and the CACU's belief that Victim-3 was the victim of a "romance scam."

35.     On 05-28-2018, a search warrant was executed on the email account engineerlookman@yahoo.com. Subscriber information for the account included the name "Mr shina aminu," a birthday of 11-28-1983, and the phone number (917) 717-3764. AMINU provided the same phone number, (917) 717-3764, in an application for a Capital One MasterCard and a membership application for DFCU. The user information also listed the email account lukmanaminu83@gmail.com as one of the "Alternate Communication Channels."

36.     A review of the engineerlookman@yahoo.com emails showed that on 10-1-2017, the account was used to send five credit card numbers with expiration dates

and Credit Card Verification ("CCV") numbers to another email address. The following day, October 2, 2017, the account was used to send ten more credit card numbers with expiration dates and CCV numbers to another email address. On 10-27-2017, pictures were sent from engineerlookman@yahoo.com to himself (engineerlookman@yahoo.com) of an unknown male in a U.S. Army uniform with the name "Leon" on the uniform.

37. Emails that were sent and received by a second Yahoo email account, edwardheaton999@yahoo.com, were included in the response to the search warrant for engineerlookman@yahoo.com. The Yahoo representative who provided the response to the search warrant stated that edwardheaton999@yahoo.com was an Internet Message Access Protocol ("IMAP") account linked to engineerlookman@yahoo.com. My understanding is that the IMAP linking shows that the same individual controlled both email accounts. On June 25, 2016, the account received an email from Yahoo, no-reply@cc.yahoo-inc.com, that stated "Hi edward, On June 25, 2016 at 10:25 AM, the mobile number +* (9**) ***-**64 was added to your Yahoo account." The three numbers that are not blocked out match the numbers in AMINU's phone number.

38. On 01-22-2017, the edwardheaton999@yahoo.com account sent an email to another email address, in which the writer states that his name is Edward Armstrong Heaton and that he "was last stationed at fort leavenworth" but is now "overseas on a special mission" where they are "denied access to phone service… and even our bank accounts." The writer closes by stating that "ALL I WANT IS TRUE LOVE and A SERIOUS RELATIONSHIP." I know, based on training and experience and my review of the engineerlookman@yahoo.com account, that this email is consistent with the

perpetration of a romance scam.

39.     The edwardheaton999@yahoo.com account was used on February 6, 2017, to send two emails containing nineteen credit card numbers with expiration dates and CCV numbers to another email address.  On February 7, 2017, the account was used to send seven credit card numbers with expiration dates and CCV numbers to another email address.  On 05-31-2017, edwardheaton999@yahoo.com was used to send bank account information for five individuals, including account usernames and passwords, to another email address.  I know, based on my training and experience and the content of these emails, that these edwardheaton999@yahoo.com account emails are furthering fraudulent activity.

40.     The engineerlookman@yahoo.com account contained several emails showing that AMINU recently moved to a new residence.  On 02-15-2018, the account received an email containing an estimate for a move from "Ray The Mover."  The address to which the goods were to be moved was 345 Dubuque Street, Manchester, New Hampshire.  On 02-28-2018, the account received an email from the United States Postal Service confirming receipt of a request for mail to be redelivered to 345 Dubuque Street, #1, Manchester, New Hampshire 03102.  Further, Lexis Nexis Accurint records for AMINU list his address as 345 Dubuque Street, Apartment 1, Manchester, New Hampshire 03102.

41.     On 06-19-2018, law enforcement conducted physical surveillance at 345 Dubuque Street and observed a blue Toyota Matrix vehicle parked on the street in front of the residence.  The Toyota Matrix, a 2006 model, was previously observed by law enforcement at AMINU's prior address, 57 Wellington Terrace.  The vehicle is

registered to AMINU and the same female referenced in paragraph 16. Based on the emails related to 345 Dubuque Street, Lexis Nexis Accurint records and physical surveillance of AMINU's vehicle outside the residence, I believe that AMINU now resides at 345 Dubuque Street, Apartment 1, Manchester, New Hampshire 03102.

42.    I believe, based on my analysis of the evidence described above, that AMINU is participating in a wide-ranging money laundering conspiracy. The conspiracy's members to date include AMINU and other unknown coconspirators. The laundered funds were sourced from various frauds, including the ERS-sourced funds from the Western District of Texas that were procured via Wire Fraud (as outlined above) and multiple other fraudulent schemes (including romance scams) sourced from victims in different jurisdictions around the United States. These frauds constitute specified unlawful activity under the money laundering statute. AMINU received these funds in money orders or via prepaid cards activated in stolen victim PII. AMINU received these funds knowing that they were the proceeds of unlawful activity and then AMINU conducted multiple financial transactions designed to conceal the nature, source, location, ownership, and control of the proceeds.

43.    Since this investigation is continuing, disclosure of the Warrant, this affidavit, and/or the application for the Warrant ("the Warrant Papers") may jeopardize the progress of this investigation. Accordingly, I request that the Court issue an order sealing the Warrant Papers until further order of this Court.

REQUEST FOR SEALING

44.    I further request that the Court orders that all papers in support of this application, including the affidavit and arrest warrant, be sealed until further order of the

Court.  These documents discuss an ongoing criminal investigation that is neither public, nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize this investigation.

Respectfully submitted,

Brad Weatherford
Texas Ranger
Texas Department of Public Safety

Subscribed and sworn to before me on _____July 9_____, 2018.

Andrew W. Austin
UNITED STATES MAGISTRATE JUDGE